# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SYMONE MERRITT, | CIVIL ACTION |
| Plaintiff, | |
| | No.: _____ |
| v. | |
| DELAWARE STATE UNIVERSITY, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Symone Merritt (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Delaware State University (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. § 2000e *et seq.*). Plaintiff's employment was unlawfully terminated by Defendant, and she suffered damages more fully described and sought herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the

standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of Delaware.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also duly filed said Charge with the Delaware Department of Labor, Division of Industrial Affairs, Office of Anti-Discrimination ("DDOL"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and duly filing his Charge with the EEOC and the DDOL and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated here in their entirety as if set forth in full.

7. Plaintiff is an adult individual residing at 137 Dewitt Cir., Camden, Delaware 19934.

8. Defendant is a privately governed, state-assisted university, located at 1200 North Dupont Highway in Dover, Delaware.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## **FACTUAL BACKGROUND**

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a female.

12. Plaintiff was hired by Defendant in or around January of 2015.

13. During her tenure with Defendant, Plaintiff performed in a variety of roles. However, Plaintiff's last position within Defendant was that of Director of Restricted Funds Accounting ("Director of RFA").

14. Plaintiff assumed the role of Director of RFA on or about December 5, 2022.

15. In her role as Director of RFA, Plaintiff was supervised by Director of Budgets – Aydea Silent (hereinafter "Silent" – Female) and indirectly supervised by Chief Financial Officer – Anas Ben Addi (hereinafter "Addi" – Male).

16. While employed with Defendant as the Director of RFA, Plaintiff was subjected to discriminatory treatment based on her gender by Addi.

17. For example, unlike her male colleagues, Plaintiff was (1) treated in a rude and condescending manner; (2) selectively reprimanded; (3) often ignored and/or given the cold shoulder; (4) spoken to very condescendingly (when Addi did speak with her); (5) abruptly interrupted while in meetings with other employees; and (6) humiliated in front of her subordinates.

18. Upon information and belief, Plaintiff was not the only female Addi treated this way. For example, Plaintiff's subordinate, Shenique Coates (hereinafter "Coates"), was also subjected to similar treatment by Addi and filed a Title IX complaint regarding the same.[1]

---

[1] Coates is also pursuing her own lawsuit against Defendant for gender discrimination and retaliation.

19. As a result of the foregoing, on or about November 10, 2023, Plaintiff emailed Silent her concerns about the hostile work environment to which Addi was subjecting her.

20. While Plaintiff did not indicate in her November 10, 2023 email that she believed Addi's hostile treatment of her was based on her gender, she did convey this sentiment during her follow-up discussion with Silent regarding the concerns outlined in her email.

21. Specifically, Plaintiff informed Silent during their follow-up discussion about Plaintiff's November 10, 2023 email that she believed Addi was sexist and that the reason he was treating her in a hostile manner was because of her gender.

22. Silent did not escalate Plaintiff's aforesaid concerns of gender discrimination to Human Resources ("HR") or do her own investigation into Plaintiff's complaints of gender discrimination. Instead, Silent's immediate (and only) response was that there was a culture difference between Plaintiff and Addi.

23. The hostile work environment that Plaintiff was being subjected to by Addi only grew worse following her November 10, 2023 complaint to Silent.

24. As a result, on or about January 18, 2024, Plaintiff emailed Silent again indicating that the hostility has not ceased since their last discussion and that HR needs to intervene at this point to make Addi's discriminatory treatment of Plaintiff stop.

25. Silent spoke to Plaintiff following her January 18, 2024 email, expressing her own concerns about feeling overworked and underappreciated, and indicated that she understood what Plaintiff was going through. However, Silent still did nothing to investigate or take remedial action regarding Plaintiff's concerns (including escalating her complaint to HR).

26. Therefore, in or around February of 2024, Plaintiff personally contacted HR and spoke with Defendant's Director of Labor Relations and Diversity – Pamela Gresham (hereinafter "Gresham" – Female).

27. After sending Gresham an initial email (wherein Plaintiff informed Gresham that she had applied for other positions and was requesting a transfer due to the hostile work environment that she was being subjected to by Addi), an in-person meeting was set up between Gresham and Plaintiff to discuss in more detail her concerns regarding Addi.

28. The meeting between Gresham and Plaintiff took place on or about March 4, 2024, during which, Plaintiff specifically told Gresham that she believed Addi was subjecting her to a hostile work environment because of her gender and gave Gresham examples of the hostile work environment to which she was being subjected.

29. Plaintiff met with Gresham on approximately 1-2 more occasions following their initial March 4, 2024 meeting, to continue discussing Plaintiff's concerns of discrimination, wherein Plaintiff was again told that there was just a culture difference between her and Addi.

30. It was clear from Plaintiff's discussions with Gresham that she had already talked to Addi about Plaintiff's complaints and that he had tried to make Plaintiff look like a poor employee and/or the problem employee.

31. It was determined after Plaintiff's aforesaid meetings with Gresham that an informal complaint would be filed, and that Gresham would schedule a "mediation" with Addi and Plaintiff for March 26, 2024.

32. During the March 26, 2024 mediation, Plaintiff addressed that she felt she was being subjected to unlawful discrimination because she is a female. Addi denied the same.

33. The March 26, 2024 mediation ended early and was supposed to be rescheduled – but it never was, and nothing was resolved regarding Plaintiff's concerns of gender discrimination.

34. Following the aforesaid March 26, 2024 mediation, Plaintiff was subjected to increased hostility and animosity in retaliation for engaging in protected activity under Title VII (and because of her gender). By way of example only:

   a. On or about April 22, 2024, Plaintiff was informed that she would no longer be permitted to work from home; however, Defendant did not provide any logical or legitimate reason for this decision.

   b. On or about May 3, 2024, Plaintiff was informed that she was being demoted from her current position to that of a Financial Administrator III allegedly because (1) Financial Administrator III better suited Plaintiff's skillset; and (2) it was in the best interests of Defendant.

   c. Plaintiff was also told that the aforesaid demotion would be effective May 6, 2024 with a $25,000 salary decrease.

35. Prior to the aforesaid retaliatory behavior (outlined in Paragraph 34 of this Complaint), Plaintiff had communications with Defendant's HR department about reviewing her personnel file, which she had the opportunity to do on March 27, 2024.

36. In reviewing her personnel file, Plaintiff found nothing negative about her performance, skill set, or any other aspect of her employment contained therein.

37. Plaintiff also received a message from Defendant's HR department on March 28, 2024, confirming that she had no disciplinary actions in her file.

38. On or about May 6, 2024 and May 7, 2024, Plaintiff emailed AVP Finance/Controller – Daniel Thompson that she did not feel well enough to report to work.

39. Plaintiff had been suffering from kidney stones and actually took time off in late April of 2024, for the same (of which Defendant's management had been apprised).

40. On or about May 7, 2024, Plaintiff filed a Title IX complaint regarding the gender discrimination and retaliation to which she was being subjected.

41. The next day, on or about May 8, 2024, Plaintiff went to Urgent Care due to the pain she was experiencing from the kidney stones and was excused from work until May 10, 2024.

42. On that same day, Plaintiff received an email from Gresham that she was being terminated from her employment.

43. On or about May 9, 2024, Plaintiff received a FedEx letter from Defendant stating that she was terminated because she did not formally accept the new position's terms and therefore, Defendant's offer to demote her was being rescinded and Plaintiff's services severed (even though she had been ill at home for several days at that point and had been calling out sick from work).

44. On or about May 22, 2024, Plaintiff received information that Defendant was claiming that she was fired for allegedly not doing her job, not responding to emails, and other things related to performance, as well as her attendance.

45. However, as of March 28, 2024, there was nothing in her personnel file to suggest that she had any performance or disciplinary issues of any kind.

46. Plaintiff believes and also avers that she was really demoted and then ultimately terminated because of her gender and/or complaints of gender discrimination.

**Count I**
**Violations of the Title VII**
**([1] Gender Discrimination; [2] Hostile Work Environment; & [3] Retaliation)**

47. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48. Plaintiff is a female.

49. During her employment with Defendant, specifically while under the supervision of Addi, Plaintiff was subjected to a hostile work environment based on her gender and/or complaints of gender discrimination through (1) disparate treatment; (2) discriminatory harassment; (3) unwarranted demotion; and (4) refusal to address her legitimate concerns of discrimination and retaliation.

50. Plaintiff complained on several occasions to Defendant's management and HR that she was being subjected to gender discrimination and/or retaliation in violation of Title VII. However, her concerns were never properly investigated or remedied and instead, she was consistently told that there is just a culture difference between her and Addi.

51. Following her complaints of discrimination and retaliation under Title VII, Plaintiff was notified that she was being demoted and then ultimately told that she was being terminated.

52. Plaintiff believes and therefore avers that her gender was a motivating or determinative factor in Defendant's decisions to demote her and then ultimately terminate her employment.

53. Plaintiff also believes and therefore avers that she was demoted and then terminated in retaliation for complaining of gender discrimination.

54. Defendant's aforesaid actions constitute violations of Title VII.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits that Plaintiff would have received had it not been for Defendant's

illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress and/or pain and suffering);

D. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

E. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

**LAROSA & ASSOCIATES LLC**

*/s/ John M. LaRosa*
JOHN M. LAROSA, ESQ.
Delaware Bar ID No. 4275
1225 King Street, Suite 802
Wilmington, DE 19801-3246
(302) 888-1290
(302) 655-9329 (fax)
JLR@LaRosaLaw.com


**KARPF, KARPF & CERUTTI, P.C.**

*/s/ Traci M. Greenberg*
TRACI M. GREENBERG, ESQ.
3331 Street Road
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801
(215) 639-4970 (fax)
cburke@karpf-law.com

*Pro Hac Vice Motion Pending*

Dated: March 12, 2025